**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

BARBARA JEANNE THOMPSON,        )
                                )
            Plaintiff,          )
                                )
      vs.                       )        Case No. 4:23-cv-00328-AGF
                                )
MARTIN O'MALLEY,[1]             )
Commissioner of Social Security, )
                                )
            Defendant.          )

**MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Barbara Thompson was not

disabled, and thus not entitled to disability insurance benefits under Title II of the Social

Security Act, 42 U.S.C. §§ 401-434 or supplemental security income ("SSI") under Title

XVI of the Act, 42 U.S.C. §§ 1381-1383f.   For the reasons stated below, the decision

will be affirmed.

**BACKGROUND**

The Court adopts the statement of facts set forth in Plaintiff's Statement of

Uncontroverted Material Facts (Doc. No. 8-1), as supplemented by Defendant (Doc. No.

11-1).   Together, these statements provide a fair description of the record before the

Court.   Specific facts will be discussed as needed to address the parties' arguments.

---

[1]      Martin J. O'Malley is now the Commissioner of Social Security.   Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, he is substituted for Acting
Commissioner Kilolo Kijakazi as the Defendant in this suit.

Plaintiff, who was born on October 27, 1972, protectively filed her application for disability benefits on October 15, 2019, and protectively filed her application for SSI on November 4, 2019.   In her application, she alleged disability beginning on July 24, 2019, due to blind or low vision, acid reflux, migraines, arthritis in knees, sleep apnea, anxiety, depression, Bipolar 2, and back problems.   Tr. 117-18.   Plaintiff's application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ").

A telephonic hearing was held on March 4, 2022.   Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing.[2]   By decision dated April 22, 2022, the ALJ found that Plaintiff had the severe impairments of degenerative disk disease, chronic obstructive pulmonary disease, and bipolar disorder with psychotic features.   Tr. 17.   However, the ALJ found that none of Plaintiff's impairments or combinations of impairments, including all of Plaintiff's medically and mentally determinable, non-severe impairments, met or medically equaled one of the deemed-disabling impairments listed in the Commissioner's regulations.

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by the Commissioner's regulations, except:

> she is unable to climb ladders, ropes, or scaffolds, but she can occasionally climb ramps or stairs, stoop, kneel, crouch and crawl.   She is to avoid exposure to extreme cold, extreme heat, and humidity.   She is to avoid

---

[2]      The hearing was held via telephone due to the circumstances presented by the COVID-19 pandemic.   The claimant consented to this format and participated via telephone.   Tr. 240

concentrated exposures to irritants such as fumes, odors, dust, gases, or poorly ventilated areas.  She is to avoid extreme vibration, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery.  She is limited to occupations that involve only simple, routine and repetitive tasks with only occasional changes in the work setting with no interaction with the public and with co-workers but contact with the public and with co-workers can occur as long as that contract is casual and infrequent.

Tr. 20.

Next, the ALJ found that Plaintiff was unable to perform any of her past relevant work, but that she could perform certain unskilled occupations at the sedentary level. Specifically, the ALJ found that Plaintiff could perform the unskilled sedentary jobs listed in the Dictionary of Occupational Titles ("DOT") of product inspector, production worker, and assembler, which the VE testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, and work experience) could perform and that were available in significant numbers in the national economy.  Tr. 25.  Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff thereafter filed a timely request for review by the Appeals Council, which was denied on January 19, 2023.  Tr. 1.  Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

In her brief before this Court, Plaintiff argues that the ALJ's RFC conclusion was not supported by substantial evidence because: (1) the RFC was not expressed in a function-by-function manner and (2) the ALJ's analysis did not provide support for the lack of limitation in Plaintiff's ability to sit, stand, or walk at one time.   Plaintiff asks

that the ALJ's decision be reversed and remanded for further evaluation.

## DISCUSSION

## Standard of Review and Statutory Framework

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.   *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).   "[T]he threshold for such evidentiary sufficiency is not high.   Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).   "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted)

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.   If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).   A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.   *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.   42 U.S.C. § 423(d)(1)(A).   The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.   The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.   If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.   A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.   20 C.F.R. § 404.1520(c).

A special technique is used to determine the severity of mental disorders.   This technique calls for rating the claimant's degree of limitations in four areas of functioning, also known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.   20 C.F.R. § 404.1520a(c)(3).   To satisfy the "paragraph B" criteria, the claimant's mental impairments must result in one "extreme" or two "marked" limitations in functioning.   An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.   A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.   20 C.F.R. § 404, Subpt. P, App. 1, 12.00(F)(2).

5

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.   If not, the Commissioner asks at step four whether the claimant has the RFC to perform his or her past relevant work.   If the claimant cannot perform his or her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.   *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005).   But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant.   *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

## Evaluation of Residual Functioning Capacity (RFC)

Plaintiff argues that the ALJ failed to assess her RFC on a function-by-function basis, erroneously expressed the RFC by exertional term only, and failed to include a sit/stand/walk limitation.   A claimant's RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations."   20 C.F.R. § 404.1545(a).   Social Security Ruling ("SSR") 96-8P states that the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and "[o]nly after that may RFC be expressed" by exertional level of work.   SSR 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §

6

404.1545(b) (instruction that the RFC should identify limitations on a function-by-function basis).   A claimant's ability to sit, stand, or walk is included in the regulations as physical work-related abilities.   *See* 20 C.F.R. § 404.1545(b).

Although this Court must review the record "to ensure that an ALJ does not disregard evidence or ignore potential limitations, [it] does not require an ALJ to mechanically list and reject every possible limitation."   *Nash v. Comm'r Soc. Sec. Admin.*, 907 F.3d 1086, 1090–91 (8th Cir. 2018) (internal citation omitted).   In *Pfitzner v. Apfel*, on which Plaintiff relies, the Eighth Circuit found that the ALJ's RFC assessment was too generic because it did not include specific functional limitations, rather the ALJ simply stated that the plaintiff could perform "a wide range of medium work."   169 F.3d 566, 568 (8th Cir. 2003).   However, when the ALJ expresses the RFC in exertional terms—sedentary, light, medium—but also includes certain explicit functional limitations, it suggests that the ALJ implicitly found no limitations as to the omitted functions.   *See Depover v. Barnhart*, 349 F.3d 563, 567-68 (8th Cir. 2003).   In *Depover*, the Eighth Circuit specifically found that an ALJ's failure to include a sit, stand, walk limitation was not reversible error.   *Id.*   In *Depover*, the ALJ made the following explicit functional findings in the plaintiff's RFC:

> [C]laimant is capable of lifting and carrying 40 pounds occasionally and 20 to 30 pounds frequently; he cannot repetitively bend, stoop, squat, kneel, or crawl and he cannot continuously climb; he must avoid work around moving machinery and heights; and he cannot perform work requiring full peripheral vision or depth perception.

*Id.* at 567.   The court explained this was distinguishable from *Pfitzner* in which the RFC

was expressed only in "general terms" because in *Depover* the ALJ made "explicit findings" as to the plaintiff's functional limitations.   *Id.*   The court further explained that,

> although we would have preferred that [the ALJ] had made specific findings as to sitting, standing, and walking, we do not believe that he overlooked those functions.   We think instead that the record reflects that the ALJ implicitly found that [the plaintiff] was not limited in theses areas: We note initially that all of the functions that the ALJ specifically addressed in the RFC were those in which he found a limitation, thus giving us some reason to believe that those functions that he omitted were those that were not limited.   Furthermore . . . the ALJ asked [the VE] an alternative hypothetical question that included the limitations on sitting, standing, and walking to which [the plaintiff] had testified . . . . Therefore it appears to us that the ALJ did not simply overlook the possibility that [the plaintiff] was limited with respect to sitting, standing, or walking when he stated his RFC.   Having carefully reviewed the record, we believe that the ALJ implicitly found that [the plaintiff] was not limited in these functions, and in this instance we do not see any reason to remand to make the findings explicit.

*Id.* at 567-68.

Here, the ALJ include several explicit limitations in Plaintiff's RFC, finding that she is:

> unable to climb ladders, ropes, or scaffolds, but she can occasionally climb ramps or stairs, stoop, kneel, crouch and crawl.   She is to avoid exposure to extreme cold, extreme heat, and humidity.   She is to avoid concentrated exposures to irritants such as fumes, odors, dust, gases, or poorly ventilated areas.   She is to avoid extreme vibration, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery.   She is limited to occupations that involve only simple, routine and repetitive tasks with only occasional changes in the work setting with no interaction with the public and with co-workers but contact with the public and with co-workers can occur as long as that contract is casual and infrequent.

Tr. 20.   Thus, it cannot be said that the ALJ merely described the RFC in "general

terms" and failed to assess Plaintiff's RFC on a function-by-function basis. Rather, it appears that the ALJ implicitly found no limitation in Plaintiff's ability to sit, stand, or walk. Indeed, it is apparent from the ALJ's opinion and the hearing testimony, that the ALJ considered Plaintiff's ability to sit, stand and walk. In his opinion, the ALJ noted Plaintiff's claim that she had difficult standing and walking and her statement that she can walk for 15 minutes and stand for 10 minutes, with 20 to 30 minutes of rest afterward. Tr. 21. He also noted that the medical source opinion of her treating physician, Dr. Stanfield, included a limitation of only sitting for 15 minutes at a time and a total of two hours in an eight-hour day. Tr. 23. The ALJ also explicitly found that such limitation was not supported by the evidence because following Dr. Stanfield's opinion Plaintiff had engaged in physical therapy and the records noted significant improvement in her condition. *Id.* Additionally, at the hearing, like in *Depover*, the ALJ asked the VE hypothetical questions that included potential limitations on Plaintiff's sitting and standing abilities based on Plaintiff's testimony:

> ALJ: Thank you. Okay, now further assume that individual that I just described now needs a sit/stand option once every 30 minutes, where the individual is off-task between one and two minutes each time they opted the sit/stand option. Would that change your answer to hypothetical #1, and if so, how?

> VE: If [they're] potentially standing on the half hour or stretch for a minute or two and you're not really losing that significant amount, I would say that all those jobs still remain in at least 90% of the numbers level.

> ALJ: Okay, at least 90% okay. Okay, now further assume that individual I just described, now I narrowed it down to every 15 minutes . . . would that change your answer to hypothetical #2, and is so, how?

9

VE:    [The need to stand every] 15 minutes would not be sustainable.

Tr. 94-95.

Thus, this was not a situation, as Plaintiff contends, in which the ALJ "simply overlooked" the possibility that Plaintiff was limited with respect to sitting, standing, or walking when he stated his RFC.[3]   *See Depover*, 349 F.3d at 567.   Accordingly, the Court finds that the ALJ implicitly found no limitation in Plaintiff's ability to sit, stand, and walk, within the confines of sedentary work.   *See Cook v. Astrue*, 629 F. Supp. 2d 925, 933 (W.D. Mo. 2009) ("[W]hile it may be better practice to make specific objective physical characteristic findings in the ALJ's determination of RFC, a failure to do so is not reversible error when the ALJ has sufficiently developed the record as to the claimant's RFC."); *see also Summerhill v. Comm'r of Soc. Sec. Admin.*, No. 3:20-05055-CV-RK, 2021 WL 4432479, at *2 (W.D. Mo, Sept. 27, 2021) ("[T]he fact that the ALJ omitted a discussion of functional abilities does not mean she did not consider them.");

---

[3]      It is also worth noting that sedentary work, by definition, includes certain sitting, standing and walking limitations.   Social Security Ruling 96-9p states: "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.   'Occasionally' means occurring very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday.   Sitting would generally total about 6 hours of an 8-hour workday." 1996 WL 364185, at *3; *see also Gray v. Kijakazi*, No. 4:20-CV-00575-MDH, 2021 WL 3891585, at *6-7 (W.D. Mo. Aug. 31, 2021) (explaining that by assessing an RFC for sedentary work "as defined in 20 CFR 404.1567(a), the ALJ made sufficiently clear that for exertional abilities, Plaintiff could (1) lift no more than 10 pounds at a time; (2) occasionally lift or carry articles like docket files, ledgers, and small tools; (3) generally walk and stand for up to about 2 hours in an 8-hour work day.") (citing 20 C.F.R. § 404.1567(a); SSR 83-10).

*Brown v. Astrue*, No. 4:09-CV-274-DJS, 2010 WL 889835, at *25 (E.D. Mo. Mar. 8, 2010) ("[A]n ALJ who specifically addresses the areas in which he found a limitation and is silent as to those areas in which no limitation is found is believed to have implicitly found no limitation in the latter.").

The next question is whether the ALJ's implicit finding that Plaintiff has no limitation for sitting, standing, or walking is supported by substantial evidence in the record.   Plaintiff argues that the record as whole, including the medical evidence, Plaintiff's testimony, and the medical source opinion of her treating primary care provider, Dr. Stanfield, shows that Plaintiff has a limitation in the ability to sit, stand, and walk.   The Court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole.   *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

**Back Pain**

Plaintiff contends that due to her back pain she can only sit, stand, and walk for short periods of time before having to shift positions.   She argues that the ALJ's failure to include this limitation is not supported by the medical records and is reversible error. The Court has conducted a thorough review of the medical evidence and the administrative record as a whole, including Plaintiff's testimony, and concludes that the ALJ's failure to include this limitation is supported by sufficient evidence and was within his zone of choice.

Plaintiff testified that her lower back "starts hurting after about a half hour" of driving, Tr. 75, and she is able to sit "[a]t least 20 minutes, maybe a half hour," Tr. 79; can stand for "about ten minutes," Tr. 81; and is "able to walk a little bit longer, maybe 15 minutes."   Tr. 82.   As discussed above, the ALJ posed hypotheticals to the VE regarding this testimony, and the VE testified that even if Plaintiff would need to stand every 30 minutes, the jobs she identified would "still remain in at least 90% of the numbers level."   Tr. 94.   The ALJ also addressed Plaintiff's testimony in his opinion noting that "[a]fter careful consideration of the evidence . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."   Tr. 21.   The ALJ then proceeded to conduct a thorough analysis of the record, which showed Plaintiff only suffered mild to moderate back problems, which improved significantly with physical therapy.

Upon independent review, Plaintiff's records indeed reflect that she has a medical history of mild to moderate back pain.   Starting in 2018, records show diagnoses of degenerative disc disorder ("DDD") and sciatica.   Tr. 422-461.   She was typically prescribed hydrocodone/acetaminophen ("Norco") to treat the pain.   *See e.g.* Tr. at 422-470, 630, 640.   Some records note that Plaintiff complained of difficulty with standing or sitting for long periods of time.   On February 20, 2019, Plaintiff complained of chronic low back pain and states that she had difficulty standing or sitting for long periods of time.   Tr. 427.   On this visit she was prescribed a five-day steroid in addition to her pain

12

medications.   *Id.*   On March 18, 2020, Plaintiff again complained of difficulty standing or sitting for long periods of time.   Tr. 448.   The record of this visit does not indicate any significant changes in her condition and her prescription remained the same.

Throughout 2020 and early 2021, medical records note back tenderness, diminished motor strength in her lower extremities, and a slow gait.   *See* Tr. 448-470. On December 14, 2020, Plaintiff saw Dr. Stanfield for an assessment related to her disability paperwork.   Tr. 469.   The physical examination noted loss of normal lumbar lordosis in her spine; lumbar tenderness; paraspinal muscles SI joint tenderness right; bilateral muscle spasm; diminished motor strength in her lower extremities; slow gait; and a negative straight leg test.   Tr. 470.   Plaintiff's pain medication was continued, and she was encouraged to use a back brace.   Tr. 471.   It does not appear from the record or Plaintiff's testimony, that she ever used a back brace.   It also appears that Plaintiff was referred to physical therapy in 2020, but did not go.   On September 16, 2020, the record states that Plaintiff "never went to physical therapy for her back pain [and] would like a new order."   Tr. 466.   She was again given a referral to physical therapy, but did not go. *Id.*[4]   She was referred to physical therapy for a third time in October 2021, and did eventually commence physical therapy in January 2022.   *See* Tr. 551, 680.

_____

[4]      "An ALJ may properly consider the claimant's noncompliance with a treating physician's directions, including failing to . . . seek treatment, and quit smoking." *Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (internal citations omitted).   Here, the ALJ noted Plaintiff's postponement in seeking physical therapy treatment and her failure to quit smoking, both of which were suggested by her treating physicians to help with her back pain.   Tr. 23.

In March 2021, Plaintiff received a back x-ray and MRI.   Her x-ray indicated "mild degenerative disc disease changes through the lumbar spine and facet hypertrophy within the lower lumbar spine at L4-L5 and L5-SI."   Tr. 627.   Her MRI noted mild disc desiccation from L2 through S; minimal disc bulging without stenosis or compression at L2/L3; minimal disc bulging with mild facet hypertrophy and mild narrowing of the central canal and foramina at L3/L4 and L4/L5; and moderate facet hypertrophy, mild disc bulging, a left subarticular annular tear and small disc protrusion causing mild left subarticular narrowing, and mild to moderate foraminal narrowing in L5/S1.   Tr. 628-29. Her primary physician noted the x-ray and MRI indicated "mild to moderate DDD at L5 level" and stated that she would be referred for a neurosurgery consult, "but it does no[t] look like she needs surgery – perhaps just an injection."   Tr. 622.

On October 13, 2021, at a neurosurgery assessment for her back, the history of present illness notes that Plaintiff has had the "same back pain since 2014," her pain is "worse with all activities including standing" and she "is unable to stand for more than 10 minutes."   Tr. 547.   On assessment it was noted that she has "pain in left back and down side and front of left thigh" and "right hip pain and groin pain down RLE to foot"; occasional numbness/tingling in her left foot; but that she has full motor strength throughout and ambulates without difficulty.   Tr. 549-50.   The neurosurgeon noted that her MRI shows "multilevel spondylosis without areas of severe stenosis" and advised Plaintiff that he did not see a surgical target in her back and "she is probably best treated with ongoing physical therapy, chiropractics, pain management, smoking cessation, and

14

weight loss."   Tr. 550-51.   He referred her to physical therapy, which she began in

January 2022.

At her first physical therapy appointment on January 7, 2022, Plaintiff reported a

pain level of 8/10.   Throughout the course of her therapy, Plaintiff's self-reported pain

score significantly decreased to approximately 4-5/10.   Plaintiff also described her back

pain as "mild" on several occasions, *see e.g.*, Tr. 669, 661, and her gait was consistently

described as "good non antalgic."   *See e.g.*, Tr. 658, 664.   By the completion of her

physical therapy on March 2, 2022, Plaintiff self-reported a pain score of 1/10.   Tr. 655.

Overall, there is sufficient evidence that Plaintiff's back pain was mild/moderate

and responded well to treatment.   Her records consistently note negative straight leg tests

and beginning in 2021, her records show normal gait, decreased complaints of back pain,

and significant improvement with physical therapy.

### Dr. David Stanfield's Opinion

Plaintiff also argues that the ALJ's analysis of Dr. Stanfield's opinion does not

provide substantial evidence to support the ALJ's implicit finding that Plaintiff has no

limitation in her ability to sit, stand, or walk at one time because the ALJ did not provide

a meaningful analysis of the opined limitations under regulatory factors.

The regulations applicable to Plaintiff's claim provide that the agency "will not

defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s), including those from [the

claimant's own] medical sources."   *See* 20 C.F.R. § 405.2520c(a) (2017) (applying to

15

claims filed March 27, 2017, or later).   "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."   *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (internal quotation marks and citation omitted).

The new regulations for claims filed after March 27, 2017, also require the ALJ to explain the persuasiveness of the medical opinions or prior administrative medical findings and explain how the supportability and consistency factors were considered. *See* 20 C.F.R §§ 404.1520c, 416.920c.   The supportability factor states, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."   20 C.F.R. § 404.1520c(c)(1).   The consistency factor states, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."   20 C.F.R. § 404.1520c(c)(2).

On December 14, 2020, Dr. Stanfield provided a medical source statement on a fill-in-the-blank, check-box form, on which he indicated that Plaintiff's diagnoses included degenerative disc disease, right sciatica, COPD, migraine, and chronic pain. Tr. 456.   He stated that Plaintiff's symptoms included low back pain with right sciatica and on and off left sciatica; chronic depression with poor/low mood; dyspnea with

exertion; and migraines one to two times per month.   *Id.*   With respect to Plaintiff's

pain, he stated that she had "low back pain chronic; deep ache with burning pain in right

sciatic region → buttocks & thigh; pain 7/10 level."   *Id.*   With respect to clinical

findings and objective signs, he simply stated "[increased] muscle tension in L-spine"

and "slow painful gait."   *Id.*   With respect to sitting and standing limitations, Dr.

Stanfield indicated that Plaintiff could sit 15 minutes at one time before needing to

change positions; could sit for two hours total in an eight-hour workday; could stand for

ten minutes at one time before needing to sit down or walk around; could stand for less

then two hours in an eight-hour workday; and would need to shift positions at will from

sitting, standing or walking.   Tr. 457.   The ALJ evaluated Dr. Stanfield's opinion,

finding some of the limitations supportable and consistent with Plaintiff's testimony.   Tr.

23.   However, the ALJ explicitly found that Dr. Stanfield's opinion regarding Plaintiff's

sitting limitations were not supported by the evidence and "[t]here is no need for the

claimant to be limited to only 15 minutes of sitting at the time and a total of two hours in

an 8-hour workday."   *Id.*   The ALJ explains that Dr. Stanfield's opinion was prepared

before the claimant did physical therapy and improvement of her condition was reported.

*Id.*   He also notes that "[h]er gait may have been slow and pain when this opinion was

drafted, but it improved significantly with treatment."   *Id.*   Ultimately, the ALJ found

Dr. Stanfield's opinion to be "not very persuasive."

An ALJ's evaluation of a medical source opinion cannot be read in isolation, and

must be read as part of the overall discussion of the plaintiff's RFC assessment.   *See*

17

*Trosper v. Saul*, No. 1:20-CV-51 DDN, 2021 WL 1857124, at *7 (E.D. Mo. May 10, 2021) ("When the decision is read in its entirety, instead of only the single paragraph addressing [medical source] opinion read in isolation, it shows the ALJ properly considered the record evidence as a whole when evaluating the supportability and consistency of the opinion.").   Here, prior to his evaluation of Dr. Stanfield's opinion, the ALJ thoroughly discussed Plaintiff's medical records, including those pertaining to her back pain and the significant improvement she experienced through physical therapy. *See* Tr. 21-22.

Additionally, a medical source opinion may be properly discounted when the source opinion is drafted prior to certain treatment records and those newer records contradict the source opinion.   *See Arflack v. Saul*, No. 4:19-CV-2959, 2020 WL 7338589, at *6 (E.D. Mo. Dec. 14, 2020) (finding that an ALJ properly discounted a medical source opinion because there were additional medical records received after the source formulated her opinion that were contradictory); *see also Krieg v. Kijakazi*, No. 4:22-CV-906 SRW, 2023 WL 4824558, at *9 (E.D. Mo. July 27, 2023) (finding no error where "read as a whole, the ALJ's determination addresses numerous medical records showing that the [medical source] opinions were not supported or consistent with treatment notes submitted after the 2019 RFC assessments were drafted."); *Barnes v. Berryhill*, No. 4:18-CV-3131, 2019 WL 2340963, at *7-8 (D. Neb. June 3, 2019) (finding that ALJ properly discounted the source opinion because the reviewer did not have access to all the records, including new evidence); *Rieffer v. Saul*, No. 1:19-CV-00214 JAR,

2020 WL 7122363, at *7 (E.D. Mo. Dec. 4, 2020) (finding that the ALJ did not "err in failing to explain precisely why she excluded certain limitations" that were included in the medical source opinion); *Swain v. Berryhill*, No. 4:16-CV-00326 JAR, 2017 WL 2132479, at *5 (E.D. Mo. May 17, 2017) (same); *McGee v. Colvin*, No. 14-04035-CV-C-DGK-SSA, 2015 WL 58484, at *4 (W.D. Mo. Jan. 5, 2015) ("An ALJ is not required to refute every alleged limitation.").

As discussed in more detail above, a review of Plaintiff's medical records confirms that Plaintiff's back pain significantly improved following Dr. Stanfield's opinion.   At the time of Dr. Stanfield's opinion, Plaintiff's pain was described as a 7/10. However, once Plaintiff began her prescribed physical therapy in early 2022, the records indicate significant improvement, with Plaintiff self-reporting her pain as a 1/10 at the completion of her physical therapy sessions.   Additionally, the back x-ray and MRI that found mild and moderate impairments and the corresponding surgical consult, discussed in more detail above, also occurred after Dr. Stanfield's opinion.   Also, Plaintiff's own testimony contradicts Dr. Stanfield's opinion that she can only sit for 15 minutes at a time: Plaintiff testified that she could sit for 30 minutes (Tr. 79) and could drive for 30 minutes before her lower back starts to hurt.   Tr. 75.

It is also worth noting that Dr. Stanfield's evaluation was provided on a check-box, fill-in-the-blank form, did not cite any medical evidence, and provided little to no elaboration.   The Eighth Circuit has held that a medical opinion "rendered on a check-box and fill-in-the-blank form," such as Dr. Stanfield's, is "entitled to relatively little

19

evidentiary value on its face" and may be properly discounted as conclusory.   *Swarthout v. Kijakazi*, 35 F.4th 606, 611 (8th Cir. 2022); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted the medical opinion that consisted of "three checklist forms, cite[d] no medical evidence, and provide[d] little to no elaboration.").   In sum, the Court finds that the ALJ properly discounted Dr. Stanfield's opinion, especially in light of the more recent medical evidence.

Here, the ALJ's implicit finding that Plaintiff has no limitation with respect to sitting, standing and walking, was supported by substantial evidence and well within his zone of choice.   *See Papesh*, 786 F.3d at 1131; *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) ("If substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome."); *see also Gray*, 2021 WL 3891585, at *6-7 (affirming sedentary RFC finding where certain functional limitations were excluded because the "ALJ's findings were supported 'by more than a mere scintilla of evidence' . . . .") (citing *Biestek*, 139 S. Ct. at 1157); *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (affirming RFC determination that did not include a stooping limitation even though a medical source opinion included a stooping limitation, in part because the opinion was rendered in a "checklist format with no narrative discussion in the postural-limitation section", and also because it was inconsistent with other medical evidence and the record as a whole); *Summerhill*, 2021 WL 4432479, at *2-3 (finding that an RFC implicitly excluded a sit, stand, walk limitation and such determination was supported by

20

substantial evidence); *Horner v. Kijakazi*, No. 3:20-cv-182, 2021 WL 7081388, at *5

(D.N.D. Dec. 14, 2021) (explaining that the "ALJ's decision implicitly finding [the

plaintiff] had no limitations in fingering and handling will be disturbed only if it lies

'outside the available zone of choice.'") (internal citation omitted); *Seavey v. Berryhill*,

No. 2:16-CV-00063-SPM, 2018 WL 1317172, at *4-5 (E.D. Mo. Mar. 14, 2018)

(collecting cases upholding RFCs that did not set forth specific functional limitations in

walking, sitting, standing, pushing, or pulling, but did include some other physical

limitations).

Thus, upon review, the Court concludes that the ALJ's finding that Plaintiff is not

disabled under the Act is supported by substantial evidence in the record as a whole.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**.   A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 12th day of March, 2024.